**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 25, 2002**

IN RE APPORTIONMENT OF TUSCOLA
COUNTY BOARD OF COMMISSIONERS—2001
_____

NORMA BATES,

    Petitioner-Appellant,

v                                           No. 120250

TUSCOLA COUNTY APPORTIONMENT
COMMISSION,

    Respondent-Appellee.
_____

PER CURIAM

    Following the 2000 census, the Tuscola County
Apportionment Commission reapportioned the districts for the
Tuscola County Board of Commissioners under MCL 46.401 _et seq_.
In this action, the petitioner raised several challenges to
the apportionment commission's actions. The Court of Appeals
upheld the apportionment plan, and the petitioner seeks leave
to appeal. We conclude that a districting plan meets
constitutional population standards if the total departure of

the largest and smallest districts from the average size does not exceed 11.9 percent, even if one district is more than 5.95 percent larger or smaller than the average. We thus overrule the contrary decision in *In re Apportionment of Wayne Co—2001*, 248 Mich App 89; 637 NW2d 841 (2001). In all other respects, leave to appeal is denied.

I

The procedure for apportioning county commission districts is established by 1966 PA 261. The statute creates a five-member apportionment commission in each county, consisting of the county prosecutor, county treasurer, county clerk, and the chairpersons of the two political parties that received the most votes for their Secretary of State candidates in the last election. MCL 46.403.[1]

The Secretary of State provided the necessary census information to the county on April 11, 2001, and the apportionment commission met several times. On May 18, it

---

[1] Unlike state legislative and congressional apportionment, there are two decisions to be made. First, the size of the county commission must be determined. MCL 46.401 provides generally that commissions are to be composed of no fewer than five nor more than thirty-five districts. However, the maximum number is actually controlled by MCL 46.402, on the basis of the population of the county. In the 2000 census, Tuscola County had a population of slightly over 58,000, and thus under that section the number of commissioners may not exceed twenty-one. Once the number of districts is determined, the statute provides guidelines to be used in apportioning them. MCL 46.404. No challenge is made in this case regarding the compliance of the adopted plan with the guidelines in that section.

voted to reduce the size of the board of commissioners from the current seven members to five. The apportionment commission then approved a districting plan for a five-member commission, which was filed with the Secretary of State on June 1, 2001.

On June 29, petitioner Bates, the chairperson of the board of commissioners, filed a petition for review in the Court of Appeals.[2] However, the Court issued an order on October 1, 2001, dismissing the petition and upholding the districting plan.[3] Petitioner has filed an application for leave to appeal to this Court. She has also filed a "supplement" to the application raising an additional issue based on the recent Court of Appeals decision in *In re Apportionment of Wayne Co—2001, supra*. In this opinion, we address only the issue regarding the permissible population divergence analysis of *In re Apportionment of Wayne Co—2001*.

II

In *Apportionment of Wayne Co Bd of Comm'rs—1982*, 413 Mich 224; 321 NW2d 615 (1982), we held that the maximum allowable

---

[2] Judicial review is available under MCL 46.406:

   Any registered voter of the county within 30 days after the filing of the plan for his county may petition the court of appeals to review such plan to determine if the plan meets the requirements of the laws of this state. Any findings of the court of appeals may be appealed to the supreme court of the state as provided by law.

[3] Docket No. 235221.

population divergence in county commission districts was 11.9 percent, on the basis of the U.S. Supreme Court's decision in *Abate v Mundt*, 403 US 182; 91 S Ct 1904; 29 L Ed 2d 399 (1971). In both the 1982 *Wayne Co* case and *In re Apportionment of State Legislature—1982*, 413 Mich 96, 141-142; 321 NW2d 565 (1982), we parenthetically described the permissible population divergence as a range around the ideal population.[4]

In a recent decision regarding the apportionment of the Wayne County Board of Commissioners following the 2000 census, the Court of Appeals has interpreted our earlier decision as

---

[4] In *Wayne Co Apportionment—1982*, we said:

> The Fourteenth Amendment requires that this be done with the least cost to the federal principle of equality of population between election districts consistent with the maximum preservation of city and township lines and without exceeding the range of allowable divergence under the federal constitution which, until the United States Supreme Court declares otherwise, shall be deemed to be the range approved in *Abate* of 11.9% (*94.05% to 105.95%*). [413 Mich 256 (emphasis added).]

Similarly, in *In re Apportionment of the State Legislature—1982*, we concluded:

> Senate and House election district lines shall preserve county lines with the least cost to the federal principle of equality of population between election districts consistent with the maximum preservation of county lines and without exceeding the range of allowable divergence under the federal constitution which, until the United States Supreme Court declares otherwise, shall be deemed to be 16.4% (*91.8%-108.2%*). [413 Mich 141 (emphasis added).]

making the parenthetical range part of the requirement for permissible population divergence. *In re Apportionment of Wayne Co—2001*, 248 Mich App 92-93. The Court invalidated a districting plan even though the plan's overall population divergence of 9.05 percent was well within the 11.9 percent allowed by *Abate*. It did so because one of the districts exceeded the ideal population by 6.2 percent and was thus outside the "range" of 5.95 percent.[5]

The plan approved by the Tuscola apportionment commission in 2001 presents a similar situation. In the 2000 census, Tuscola County had a population of 58,266, so that a five-district plan would have had an ideal population of 11,653 per district. The districts approved by the apportionment commission, and their departures from the ideal population, are as follows:

District #1     11211     (-442)      96.207%

District #2     12392     (+739)     106.342%

District #3     12174     (+521)     104.471%

District #4     11046     (-607)      94.791%

District #5     11443     (-210)      98.198%

The petitioner did not raise an issue regarding this

---

[5] The Court of Appeals invalidated the Wayne County plan and remanded for adoption of a new one, retaining jurisdiction. The apportionment commission approved a new plan, and on rehearing, the Court of Appeals denied the petition for review, confirming the new plan. *In re Apportionment of Wayne Co—2001 (On Rehearing)*, 250 Mich App ___; ___ NW2d ___ (Docket No. 235339, issued April 12, 2002).

population divergence question in the Court of Appeals, nor did she do so in her application for leave to appeal to this Court. However, after the decision in the *Wayne Co* case, she filed a "supplement" to the application challenging the apportionment plan on this population divergence question for the first time. She argued that the plan was invalid because District 2 exceeds the ideal population by more than 5.95 percent.

### III

The decision by the Court of Appeals in *Wayne Co—2001* construed our parenthetical reference to an equidistant percentage range as a mandatory principle in apportionment cases. Our decisions regarding local and state legislative apportionment cases have adopted the maximum population ranges on the basis of United States Supreme Court decisions holding that plans that deviated by those amounts met federal constitutional standards. In the local government context, *Abate* approved a plan with an 11.9 percent divergence, and *Mahan v Howell*, 410 US 315; 93 S Ct 979; 35 L Ed 2d 320 (1973), approved a maximum deviation of 16.4 percent in the state legislative apportionment context. We adopted those federally imposed limits without independent analysis and without indicating that any additional requirements were to be imposed. Our opinions stated such ranges parenthetically, apparently for illustrative purposes. However, no support for an equidistant range principle can be found in the United

6

States Supreme Court opinions on which our decisions were based, and there is no statutory basis for such a requirement. Indeed, those United States Supreme Court decisions approved apportionment plans that had population variances that would not have been permissible if an equidistant range principle had been used. In *Abate*, one district was 7.1 percent below the ideal population. 403 US 184, n 1. Similarly, *Mahan* upheld a state legislative districting plan with a 16.4 percent percentage variation, but in which the largest district was underrepresented by 9.6 percent, well outside an "equidistant range" of 8.2 percent. 410 US 319.

Thus, the population divergence criterion of 11.9 percent total variation does not include an additional equidistant range limitation. The Tuscola County plan adopted by the apportionment commission in this case meets the equal population standard established by *Wayne Co Apportionment—1982*. In that regard the petition for review is denied.[6]

---

[6] The petitioner has raised several other issues regarding the apportionment commission's actions. As to those claims, the application for leave to appeal is denied. Although the Court has some concerns regarding the interpretation of MCL 46.601 set forth in *Kizer v Livingston Co Bd of Comm'rs*, 38 Mich App 239; 195 NW2d 884 (1972), that issue is not properly before the Court because there is no evidence that the Board of Commissioners attempted to reapportion the commissioner districts within the thirty-day period mentioned in the statute. Absent such an attempt, or a declaratory judgment action challenging *Kizer*'s interpretation of the MCL 46.401, there is no justiciable controversy before us.

Pursuant to MCR 7.317(C)(3) the clerk is directed to issue the judgment order forthwith.

CORRIGAN, C.J., and WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

CAVANAGH, J., would deny leave to appeal.