TUSCOLA COUNTY BOARD OF COMMISSIONERS v
TUSCOLA COUNTY APPORTIONMENT COMMISSION

Docket No. 242105. Submitted November 5, 2003, at Detroit. Decided
June 15, 2004, at 9:10 A.M. Leave to appeal sought.

The Tuscola County Board of Commissioners brought an action
against the Tuscola County Apportionment Commission, seeking a
declaratory judgment that the board of commissioners had a right
to apportion the county commissioner districts under MCL 46.401.
The circuit court, Patrick R. Joslyn, J., followed the construction of
MCL 46.401 in *Kizer v Livingston Co Bd of Comm'rs,* 38 Mich App
239 (1972), and entered an order denying the plaintiff's requested
declaratory relief. The plaintiff appealed.

The Court of Appeals *held*:

MCL 46.401 provides: "Within 60 days after the publication of
the latest United States official decennial census figures, the county
apportionment commission in each county of this state shall appor-
tion the county into not less than 5 nor more than 35 county
commissioner districts as nearly of equal population as is practi-
cable and within the limitations of section 2. In counties under
75,000, upon the effective date of this act, the boards of commis-
sioners of such counties shall have not to exceed 30 days into which
to apportion their county into commissioner districts in accordance
with the provisions of this act. If at the expiration of the time as set
forth in this section a board of commissioners has not so appor-
tioned itself, the county apportionment commission shall proceed to
apportion the county under the provisions of this act."

The *Kizer* Court correctly determined that the statute is
ambiguous and that the statute granted to county boards of
commissioners in counties having less than 75,000 population in
1960 an option of self-apportionment only for a period of thirty
days following the effective date of the statute in 1967. The statute
did not give the county boards a decennially recurring option of
self-apportionment. Instead, after the option period, the power
and responsibility for reapportioning the boards of commissioners
for those counties was granted exclusively to the apportionment
commissions of those counties.

Affirmed.

CAVANAGH, J., writing the lead opinion, disagreed with the *Kizer* Court's interpretations regarding the applicability of the last antecedent rule. Rather, the exception to the last antecedent rule applied. Here, the dominant purpose of the statute resolves the ambiguity. The statutory language presents an inconsistency. The beginning sentence mandates that county apportionment commissions in each county shall apportion their counties. However, the second sentence then permits, in counties with a population of less than 75,000, the boards of commissioners to apportion their counties. In this regard, the *Kizer* Court's application of the "in pari materia" rule to these two sentences was incorrect. That rule applies to harmonizing different statutes having the same subject. Here, the focus is on harmonizing the provisions within a single statute. The result of that effort is the conclusion that the second sentence of § 401 carves out a limited window of opportunity for boards of commissioners in counties with a population of less than 75,000, to perform the apportionment duties. Nothing in the legislative history reveals an intent that counties with a population under 75,000 in 1967, retained a perpetual right to have the boards of commissioners perform apportionment duties regardless of subsequent population growth over 75,000. Finally, support for that conclusion is found in the fact that the Legislature is presumed to be aware of appellate court statutory interpretations, and the Legislature for over thirty years has failed to amend the statute following the *Kizer* Court's construction.

SCHUETTE, J., concurred in the decision reached in the lead opinion that the *Kizer* Court correctly decided the issue before it and therefore, is dispositive of this case, but wrote separately to raise concerns regarding the reasoning used in *Kizer* and with aspects of the lead opinion. The *Kizer* Court and the lead opinion rely too heavily on legislative knowledge of grammatical rules. The Michigan Supreme Court disfavors that method of statutory construction because it places undue emphasis on form over substance. Rather, legislative intent is more readily ascertained by considering the object of the statute, the harm it was designed to remedy, and by applying a reasonable construction that best accomplishes the statute's purpose. Finally, reliance upon legislative acquiescence through silence has been squarely rejected by our Supreme Court.

WHITE, J., wrote separately to state her agreement that the *Kizer* decision should not be overturned, and therefore concurred.

*Nantz, Litowich, Smith & Girard* (by *John H. Gretzinger*) for the plaintiff.

*Mark E. Reene,* Prosecuting Attorney, for the defendant.

Before: SCHUETTE, P.J., and CAVANAGH and WHITE, JJ.

CAVANAGH, J. Plaintiff appeals as of right from a declaratory judgment denying its claim that a county board of commissioners has a right under MCL 46.401 to apportion the county into commissioner districts. We affirm.

The sole issue on appeal concerns the interpretation of MCL 46.401, which provides:

> Within 60 days after the publication of the latest United States official decennial census figures, the county apportionment commission in each county of this state shall apportion the county into not less than 5 nor more than 35 county commissioner districts as nearly of equal population as is practicable and within the limitations of section 2. In counties under 75,000, upon the effective date of this act, the boards of commissioners of such counties shall have not to exceed 30 days into which to apportion their county into commissioner districts in accordance with the provisions of this act. If at the expiration of the time as set forth in this section a board of commissioners has not so apportioned itself, the county apportionment commission shall proceed to apportion the county under the provisions of this act.

The second sentence is the primary focus of the dispute. Plaintiff argues that the sentence is unambiguous and must be enforced as written, particularly the phrase "upon the effective date of this act." Plaintiff argues that this phrase modifies the antecedent phrase "[i]n counties under 75,000" and not the subsequent phrase "the boards of commissioners . . . ." According to plaintiff, then, the correct meaning of the second sentence is that "[t]he boards of commissioners of the 65 counties under 75,000 in population as of March 10, 1967, are

permitted 30 days to attempt to complete [the] apportionment process." Further, that without regard to whether population growth subsequently surpasses 75,000, this right inheres in these counties in perpetuity.

In *Kizer v Livingston Co Bd of Comm'rs*, 38 Mich App 239; 195 NW2d 884 (1972), this Court considered the same argument that plaintiff posits here. But, plaintiff urges us to reconsider and, ultimately, reject *Kizer* as wrongly decided. We are not bound by *Kizer*, MCR 7.215(I)(1), but we remain convinced that *Kizer* should not be disturbed.

The *Kizer* Court framed the issue as

> whether § 1 of the County Reapportionment Act granted county boards of commissioners in counties having less than 75,000 population in 1960 a 30-day period following publication of each official United States decennial census in which said boards could apportion themselves, or whether this option was restricted to the 30-day period following the effective date of the original act. [*Id.* at 246.]

After concluding that the statutory language was ambiguous, the *Kizer* Court proceeded to utilize the rules of statutory construction to resolve the ambiguity. *Id.* First, plaintiff claims that the statute is not ambiguous and, thus, the *Kizer* Court erred in concluding that it was. We disagree.

Statutory language is deemed ambiguous if reasonable minds could differ with regard to its meaning, i.e., the language is susceptible to more than one interpretation. *In re MCI*, 460 Mich 396, 411; 596 NW2d 164 (1999). Here, it is not the words of the statute per se that lead to ambiguity, but the punctuation, in particular, the two commas in the second sentence. Does the statute direct the boards of commissioners in counties with populations under 75,000 to apportion their coun-

ties, one time, into commissioner districts within thirty days of the date that this apportionment act became effective? Or, does the statute grant counties with populations under 75,000 on the effective date of the act the right to apportion their counties into commissioner districts every ten years and within 30 days of the release of the United States official census figures?

Plaintiff argues that the "last antecedent" rule should govern the construction of this statute. That grammatical rule provides "that a modifying or restrictive word or clause contained in a statute is confined solely to the immediately preceding clause or last antecedent, unless something in the statute requires a different interpretation." *Stanton v Battle Creek*, 466 Mich 611, 616; 647 NW2d 508 (2002). Stated differently, " ' "a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." ' " *Haveman v Kent Co Road Comm*, 356 Mich 11, 18; 96 NW2d 153 (1959), quoting *Kales v Oak Park*, 315 Mich 266, 271; 23 NW2d 658 (1946), quoting *Hopkins v Hopkins*, 287 Mass 542, 547; 192 NE 145 (1934).

According to plaintiff, then, the qualifying phrase "upon the effective date of this act" is only applicable to the phrase "[i]n counties under 75,000." The *Kizer* Court rejected that argument, opining that such a construction would require a determination that the comma between the words "75,000" and "upon" was inadvertent, which was untenable in light of the importance of punctuation in determining legislative intent and the presumption that the Legislature is cognizant of the rules of grammar. *Kizer, supra* at 250-251. Instead, the *Kizer* Court interpreted "upon the effective date of this act" as triggering "not to exceed 30 days"

and held that such interpretation was consistent with the rule of the last antecedent. *Id.* at 252. I disagree with both plaintiff's and the *Kizer* Court's interpretations. If the phrase "upon the effective date of this act" is a modifying or restrictive phrase within the contemplation of the rule of the last antecedent, I conclude that its exception is applicable here, i.e., the rule does not apply because "there is something in the subject matter or dominant purpose which requires a different interpretation."

Because the statute is ambiguous, judicial construction is required to resolve the ambiguity. Our primary goal is to ascertain and give effect to the intent of the Legislature. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). We consider the object of the statute, as well as the harm it was designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. *Marquis v Hartford Accident & Indemnity Co (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994). We assume that every word has some meaning and, as far as possible, give effect to every sentence, phrase, clause, and word, avoiding a construction that would render any part of the statute surplusage or nugatory. *Pohutski v City of Allen Park*, 465 Mich 675, 683-684; 641 NW2d 219 (2002).

First, we turn to the specific language of MCL 46.401. The first and second sentences seem to present an inconsistency. The first sentence mandates, through the use of the word "shall," that "the county apportionment commission in each county of this state" apportion its county into commissioner districts. See *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 65; 642 NW2d 663 (2002) (the word "shall" designates a mandatory provision). Accordingly, it specifically assigns these appor-

tionment responsibilities to county apportionment commissions in every county of the state, without reservation or qualification.

The second sentence then states "[i]n counties under 75,000, upon the effective date of this act, the boards of commissioners of such counties shall have not to exceed 30 days into which to apportion their county into commissioner districts in accordance with the provisions of this act." Does this second sentence create an exception to the mandated assignment created by the first sentence? Although the *Kizer* Court applied the in pari materia rule to these two sentences, *Kizer, supra* at 251, I find it inapplicable. See *Jennings v Southwood*, 446 Mich 125, 136; 521 NW2d 230 (1994), quoting *Wayne Co v Auditor General*, 250 Mich 227, 233; 229 NW 911 (1930) (the object of the in pari materia rule is to give effect to the legislative purpose as found in harmonious statutes on a subject).

Because we are not permitted to add provisions to statutes under the guise of interpretation, *In re Wayne Co Prosecutor*, 232 Mich App 482, 486; 591 NW2d 359 (1998), we focus on the existing provisions, in context, in an attempt to construct a harmonious statute. See *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159; 627 NW2d 247 (2001). The result of that effort is the conclusion that the second sentence was not an attempt to deprive the first sentence of its substantive force, but to carve out a small window of opportunity for the boards of commissioners in counties under 75,000 to have the final opportunity to perform apportionment duties. The other provisions in this apportionment act support this conclusion. As the *Kizer* Court noted, no other statute in this act refers to county boards of commissioners as apportionment entities. See *Kizer, supra* at 252. Only county apportionment commissions

are designated as having apportionment powers and are
repeatedly referenced accordingly. See MCL 46.403,
46.404, 46.405, 46.407. If the Legislature intended to
grant the boards of commissioners in counties with
populations under 75,000 a perpetual right to apportion
their counties every ten years, regardless of their popu-
lation growth subsequent to March 10, 1967, such right
would have been clearly and unambiguously stated and
referred to throughout the apportionment act.

Plaintiff's argument that the legislative history of
this apportionment act refutes the *Kizer* Court's deci-
sion and, now, our own conclusion, is not persuasive. We
agree that consideration of legislative history can be
beneficial to issues of statutory interpretation, *In re
Certified Question*, 468 Mich 109, 115 n 5; 659 NW2d
597 (2003), and have reviewed the legislative history.
We agree with the *Kizer* Court's analysis of the relevant
legislative proceedings and need not repeat it here. See
*Kizer, supra* at 243-249. We also agree with the *Kizer*
Court's ultimate conclusion regarding the dominant
purpose of this apportionment act and its characteriza-
tion of the harm the act was designed to remedy:

> The apportionment act established a sophisticated, pro-
> gressive, comprehensive mechanism designed to eliminate
> the archaic apportioning procedures then extant. Given the
> traditional inability of existing political bodies to apportion
> themselves, it is not likely that the Legislature intended
> that this newly-developed apportionment mechanism
> should perpetually be inapplicable to 65 of Michigan's 83
> counties. [*Kizer, supra* at 255.]

Review of the legislative history reveals, as the *Kizer*
Court noted, that the Legislature had the opportunity
to "create a mechanism whereby county Boards of
Commissioners would have a perpetual option to appor-
tion themselves," and such option was rejected. *Kizer,*

*supra* at 256. Further, the Legislature has revisited this apportionment act after the issuance of the *Kizer* decision and has failed to amend the language of MCL 46.401. The Legislature is presumed to act with knowledge of appellate court statutory interpretations. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505-506; 475 NW2d 704 (1991). The failure to amend the language following this Court's construction of it over thirty years ago suggests legislative affirmance of our interpretation. See *Craig v Larson*, 432 Mich 346, 353; 439 NW2d 899 (1989). We will not second-guess the *Kizer* Court or the Legislature now.

In sum, MCL 46.401 is ambiguous. Even if the rule of the last antecedent were applicable, it would not govern the interpretation of this statute because the resulting construction would be contrary to the clear mandate of the preceding sentence, and would be inconsistent with the dominant purpose of the statute. We will not defeat the clear and explicit language of one sentence in an attempt to decipher the ambiguities of another. Instead, we attempt to harmonize apparent inconsistencies so as to produce a reasonable construction that best accomplishes the statute's purpose—here, the establishment of apportionment procedures that effectively and efficiently protect the integrity of the political process. See, e.g., *Avery v Midland Co*, 390 US 474, 479-481; 88 S Ct 1114; 20 L Ed 2d 45 (1968). The *Kizer* Court's construction of MCL 46.401 fulfilled that objective and we agree with it. The legislative history does not affirmatively or persuasively lead to a different construction. Accordingly, pursuant to MCL 46.401, county apportionment commissions in each county of the state have the exclusive right and duty to apportion their respective counties within sixty days after the publication of the latest United States official decennial census figures.

Affirmed.

SCHUETTE, P.J. *(concurring)*. I concur in the decision reached by my distinguished colleague in the lead opinion. Specifically, pursuant to MCL 46.401, "county apportionment commissions in each county have the exclusive right and duty to apportion their respective counties within sixty days after the publication of the latest United States decennial census figures." *Ante* at 429.

The issue presented before this Court was whether MCL 46.401 provided county boards of commissioners in Michigan counties populated by less than 75,000 people a one-time window of opportunity to self-apportion or whether the opportunity to self-apportion was perpetually granted to those counties upon the effective date of the statute, regardless of their later population growth.

Thirty-two years ago, in *Kizer v Livingston Co Bd of Comm'rs*, 38 Mich App 239; 195 NW2d 884 (1972), this Court reached the correct decision in overruling a 1970 opinion of Attorney General Frank Kelly by holding the disputed statutory language—namely, the phrases "in counties under 75,000" and "upon the effective date of this act"—constituted a one-time opportunity, effectively the last, for county boards of commissioners to conduct apportionment, instead of a county apportionment commission. The conclusion reached in *Kizer* is dispositive in this case.

While the *Kizer* Court ultimately reached the correct legal decision, its analytical approach contains some fault lines.[1] Therefore, I raise some objections and concerns with the reasoning in *Kizer* and with certain aspects of the lead opinion.

Our task in construing statutes is to discern and give effect to the intent of the Legislature. *Weakland v*

---

[1] *See In re Apportionment of Tuscola Co Bd of Comm'rs*, 466 Mich 78, 84 n 6; 644 NW2d 44 (2002).

*Toledo Engineering Co*, 467 Mich 344, 347; 656 NW2d 175 (2003). To accomplish this task, we begin by examining the language of the statute itself because statutory language provides the most reliable evidence of legislative intent. *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written; no further judicial construction is permitted. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). Thus, judicial statutory construction is only appropriate when a statute's language is ambiguous, that is, it can lend itself to two rational interpretations. *Id.*

Admittedly, the inclusion of the separating comma that divides the disputed statutory clauses creates such ambiguity. Yet the *Kizer* Court and the lead opinion in this case placed undue emphasis on the inclusion of the separating comma between the clauses. Presuming exacting legislative knowledge of grammatical rules— namely, the "last-antecedent" rule[2]—both the *Kizer* Court and the lead opinion found legislative intent suggesting that the disputed phrase was not intended to modify the first clause of the second sentence. *Kizer, supra* at 251. *Ante* at 426. Notably, however, the *Kizer* Court purported to apply the last-antecedent rule, while the lead opinion applied the rule's exception.[3] Yet the two came to the same conclusion.

I contend this preoccupation with legislative knowledge of rules of grammar is misplaced. Our Supreme

---

[2] The grammatical "last-antecedent" rule holds that a modifying word or clause is confined solely to the last antecedent. *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999). The rule does not apply if a contrary intention appears. Id.

[3] Kizer, supra at 252; ante at 426.

Court has noted, "[r]elying [too] heavily upon the absence of a punctuation mark . . . exalts form over substance. Although the form and location of a [clause] may be some indication of legislative intent, form alone will not control." *In re Forfeiture of $ 5,264*, 432 Mich 242, 253; 439 NW2d 246 (1989); see 2A Sands, Sutherland Statutory Construction, § 47.09, p 138. The same is true when a nonconforming comma is included in statutory language that only makes sense if read in a particular light after considering the legislative history. 432 Mich at 242; Sands, p 138. Since the rules of statutory construction require that the intent of the Legislature, once ascertained, prevail regardless of any conflicting rule of grammar or statutory construction, *Green Oak Twp v Munzel*, 255 Mich App 235, 240; 661 NW2d 243 (2003), this Court should not grapple with stringent grammatical rules when legislative intent can be more easily ascertained through other means. Rather, it is more appropriate to consider the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. *People v Lawrence*, 246 Mich App 260, 265; 632 NW2d 156 (2001). After all, our primary task is to interpret the language of a statute—interpreting its grammatical structure is a secondary concern. Thus, I contend that, in construing statutes, this Court should apply exact grammatical rules, arguably divested from common usage, only after other methods of discerning legislative intent are exhausted.

My second objection to the analysis used by *Kizer* and the lead opinion is their reliance on the doctrine of legislative acquiescence. This principle of statutory construction has been squarely rejected by our Supreme Court because it reflects a critical misapprehension of the legislative process. *People v Hawkins*, 468 Mich 488, 507; 668 NW2d 602 (2003); *See Robertson v Daimler-*

*Chrysler Corp,* 465 Mich 732, 760 n 15; 641 NW2d 567 (2002); *Nawrocki v Macomb Co Rd Comm,* 463 Mich. 143, 177-178 n 33; 615 NW2d 702 (2000). Rather, Michigan courts are required to determine legislative intent by the Legislature's words not its silence. *Hawkins, supra* at 507. The Legislature's silence in regard to this statutory language has no dispositive effect on our interpretation. I believe the lead opinion erred by including this doctrine as a basis for its decision.

WHITE, J. (*concurring*). I agree that *Kizer v Livingston Co Bd of Comm'rs,* 38 Mich App 239; 195 NW2d 884 (1972), should be not be overturned, and therefore concur.