*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* APPORTIONMENT–CASS COUNTY–2021.

---

JAMES PEDERSEN,

      Petitioner,

v

CASS COUNTY APPORTIONMENT
COMMISSION,

      Respondent.

UNPUBLISHED
May 12, 2022

No. 359181

---

Before: CAMERON, P.J., and CAVANAGH and GADOLA , JJ.

PER CURIAM.

In this original action for review of an apportionment plan, see MCL 46.406, petitioner, James Pedersen, asks this Court to review whether respondent, Cass County Apportionment Commission (the Commission), improperly adopted its apportionment plan for 2021. More specifically, Pedersen alleges that the Commission violated the law by adopting a plan that violated the requirements stated under MCL 46.404. On the basis of these allegations, he asks this Court to invalidate the plan. We conclude that the Commission adopted an apportionment plan that did not comply with MCL 46.404. Accordingly, we invalidate the apportionment plan and remand this case to the Commission to adopt an apportionment plan that complies with the law.

## I. BASIC FACTS

Every county in this state has an apportionment commission. The apportionment commissions consist of the "county clerk, the county treasurer, the prosecuting attorney, and the statutory county chairperson of each of the 2 political parties receiving the greatest number of votes cast for the office of secretary of state in the last preceding general election." MCL 46.403(1). In this case, the Commission's members were: the County Clerk, Monica McMichael; the County Treasurer, Hope Anderson; the County Prosecutor, Victor Fitz; the Chairperson of the Cass County Republican Party, Mark Howie; and the Chairperson of the Cass

-1-

County Democratic Party, Naomi Ludman, Ph.D. The Commission's members are all Republican except for Dr. Ludman.

The apportionment commissions are required to apportion the county into districts for the election of county commissioners after the publication of each of the latest United States official decennial census figures. See MCL 46.401(1). The commissioners in this case met to adopt a new apportionment plan using the data from the 2020 census.

At the meeting held on October 8, 2021, the Commission considered four maps. Anderson submitted two apportionment plans—one with seven districts and another with nine districts. McMichael submitted an eight-district apportionment plan (the McMichael Plan) and Dr. Ludman also submitted an eight-district plan (the Ludman Plan). The Commission determined that the eight-district plans were preferable to the seven- and nine-district plans. The Commission then compared the McMichael Plan and Ludman Plan. The following are the two proposed plans; the McMichael Plan is on the left and the Ludman Plan is on the right:



The Commission recognized that the Ludman Plan kept Dowagiac undivided in a single district (District 1), which met the requirements of MCL 46.404(e). The minutes reflected that Dr. Ludman opined that keeping the city as a single district also satisfied the criteria that the maps not be drawn to effect partisan political advantage. See MCL 46.404(h). She explained that the city was the only place within the county where a competitive district could be drawn because the remainder of the county leaned Republican. She also felt that keeping the city as a single district gave minority voters a greater influence in the outcome of the election.

Commissioner Howie responded that it was his understanding that the criteria requiring them to refrain from drawing the districts for political advantage required them to pay "no attention" to any "partisan lean"; he felt that the Commission should remain " 'blind' to

-2-

information about the political makeup of the districts." McMichael indicated that she did not consider any partisan information when drafting her proposed districts.

Commissioners Howie and Fitz also both felt that the districts in the McMichael Plan were more compact. Commissioner Howie related his belief that District 8 in the Ludman Plan was too large and would be difficult for a county commissioner to represent. Commissioners Howie and Fitz indicated that the benefits of the more compact districts outweighed the issue involved with splitting the Dowagiac into two districts.

After a break, the Commission's four Republican members voted to adopt the McMichael Plan. Only Dr. Ludman voted against the adoption of the McMichael Plan. The Commission's apportionment plan became effective once submitted to the County Clerk. See MCL 46.405. However, any "registered voter of the county" could petition this Court within 30 days after the filing of the plan and ask this Court to review whether the plan meets the requirements of this state's laws. See MCL 46.406. On November 5, 2021, Pedersen—a registered voter in Cass County—petitioned this Court to review the apportionment plan adopted by the Commission.

In December 2021, this Court ordered Pedersen's original action to proceed to a full hearing. See *In re Apportionment–Cass County–2021*, unpublished order of the Court of Appeals, entered December 21, 2021 (Docket No. 359181). We now examine the apportionment plan the Commission adopted to determine whether it complied with the requirements of MCL 46.404.

## II. ANALYSIS

## A. SCOPE OF REVIEW

On appeal, Pedersen argues that the apportionment plan the Commission adopted—the McMichael Plan—did not comply with the requirements of MCL 46.404[1] and does not comply with the requirements of the Fourteenth Amendment to the Constitution of the United States, US Const, Am XIV. For that reason, he asks this Court to invalidate the plan.

The Legislature provided that any registered voter of the county could "petition the court of appeals to review such plan to determine if the plan meets the requirements of the laws of this state." MCL 46.406. The Legislature expressed that this Court's review was limited to determining whether the plan adopted by the Commission met the requirements imposed under state law. It did not empower this Court to review whether the plan met the requirements of federal law. See, e.g., *Meadowbrook Village Assoc v Auburn Hills*, 226 Mich App 594, 596; 574 NW2d 924 (1997) (recognizing that the Legislature did not give the tax tribunal jurisdiction over constitutional claims); cf. *Okrie v Michigan*, 306 Mich App 445, 467-468; 857 NW2d 254 (2014) (stating that circuit courts are courts of general jurisdiction under Michigan's constitution). Our

---

[1] In his original petition, Pedersen also argued that the Commission violated the law by adopting its plan before the passage of 30 days from the date that the census data had been released. Pedersen did not restate that claim or argue its merits in his Brief on Full Hearing. As such, we conclude that he abandoned it. See MCR 7.212(C)(5); *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008).

Supreme Court has interpreted the requirement stated in MCL 46.404(a) to incorporate the definition of "as nearly equal population as is practicable" under federal law. See *Apportionment of Wayne Co Bd of Comm'rs—1982*, 413 Mich 224, 263; 321 NW2d 615 (1982). But it did not incorporate the burden-shifting approach identified by Pedersen in his claim under the Fourteenth Amendment. Therefore, our review is limited to determining whether the plan adopted by the Commission met the requirements of this state's law.

This Court has original jurisdiction to hear claims that an apportionment plan does not comply with the law. See MCL 46.406; MCR 7.203(D). Because this is an original action, this Court is not bound by a standard of review applicable to the review of a lower tribunal's decision. Rather, this Court selects, interprets, and applies the law in the first instance, as would a trial court.

This case involves the proper interpretation and application of statutory criteria. This Court's primary goal when interpreting a statute is to give effect to the Legislature's intent. See *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 136; 892 NW2d 33 (2016). When a statute is unambiguous, this Court presumes that the Legislature intended the meaning expressed in the statute. *Id*. This Court construes statutes by giving every word in the statute its plain and ordinary meaning unless the Legislature defined the term or used technical terms. *Id*.

## B. BACKGROUND LAW

An apportionment plan for a county board of commissioners must comply with the requirements stated in MCL 46.404 to the extent this can be done without violating the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, which embodies the concept of one person-one vote. See *Apportionment of Wayne Co*, 413 Mich at 255-256.

Under MCL 46.404, the Legislature listed a series of "guidelines" governing the apportionment of districts by county apportionment commissions. The Legislature stated that the "guidelines" are listed in "order of importance." MCL 46.404. The guidelines stated under MCL 46.404 are:

> (a) All districts shall be single-member districts and as nearly of equal population as is practicable. . . .

> (b) All districts shall be contiguous.

> (c) All districts shall be as compact and of as nearly square shape as is practicable, depending on the geography of the county area involved.

> (d) No township or part thereof shall be combined with any city or part thereof for a single district, unless such combination is needed to meet the population standard.

> (e) Townships, villages and cities shall be divided only if necessary to meet the population standard.

(f) Precincts shall be divided only if necessary to meet the population standard.

(g) Residents of state institutions who cannot by law register in the county as electors shall be excluded from any consideration of representation.

(h) Districts shall not be drawn to effect partisan political advantage.

In examining the Legislature's stated intent, our Supreme Court has agreed with the general proposition that courts should defer to an apportionment commission's decision to select one apportionment plan from among more than one complying plan because there will always be "areas for the exercise of judgment" and a "reasonable choice in the reasoned exercise of judgment should ordinarily be sustained." *Apportionment of Wayne Co*, 413 Mich at 264. For that reason, as this Court has stated, there is no "best plan" test that requires an apportionment commission to adopt the apportionment plan that "more closely approaches perfection," even though a competing, but less perfect, plan meets the "constitutional and statutory standards." *In re Apportionment of Clinton Co—1991 (After Remand)*, 193 Mich App 231, 236; 483 NW2d 448 (1992).[2] But the Supreme Court has also noted that the Legislature provided for review of apportionment plans in court, which necessarily requires this Court to develop guidance for the apportionment commissions using the legislative criteria. *Apportionment of Wayne Co*, 413 Mich at 265. The statutorily-mandated review also precludes courts from denying meaningful review on the ground that apportionment is inherently a political question. *Id*. at 265-266. According to our Supreme Court, we are duty bound to provide guidance on the criteria applicable to apportionment at the county level. *Id*.[3]

Turning to the listed criteria, our Supreme Court has rejected the contention that the Legislature intended an absolute priority on the basis of the order that the Legislature listed the criteria. The Court explained that, if the stated order were interpreted to require exhaustive compliance before turning to the next criterion, Criteria (a) through (c) would be determinative and Criteria (d) through (f) could not be given effect. *Id*. at 258. The Court refused to give the statute such a rigid construction. *Id*. at 259-260.

---

[2] Because there is no best-plan test, the Commission's complaints that the Ludman Plan also violates the statutory criteria is inapposite. This Court has not been tasked with reviewing the validity of the Ludman Plan—it has been asked to review the validity of the McMichael Plan, which was adopted by the Commission.

[3] For these reasons, the Commission's argument that this Court must afford the Commission the least possible judicial interference lacks merit. The Legislature provided this Court with original jurisdiction to review whether a particular apportionment plan complies with this state's law. See MCL 46.406. And this Court has a duty to conduct a meaningful review. See *Apportionment of Wayne Co*, 413 Mich at 265-266. Any deference that this Court may owe involves deference to the Commission's selection of one plan out of many competing plans that are otherwise valid. See *id*. at 264.

The Supreme Court stated that Criteria (a) through (f) represent apportionment goals. The districts must be single-member districts with "as nearly of equal population as is practicable." MCL 46.404(a). Our Supreme Court held that the phrase " 'as nearly of equal population as is practicable' " meant that the apportionment commissions had to draw the borders of the districts consistent with the other requirements without exceeding the range of allowable divergence in population under the federal constitution, which the Court held was 11.9%. *Apportionment of Wayne Co*, 413 Mich at 263. For that reason, the mere fact that the districts do not have approximately equal population does not mean that an apportionment plan violates Criterion (a). The Court noted as well that the Legislature placed a high value on the preservation of the borders of cities, villages, townships, and precincts through the enactment of Criteria (d), (e), and (f), but that the Legislature had placed a higher priority on drawing districts that are as square and compact as practicable. *Id.* at 260-261.

The Court determined that the Legislature required the districts to be contiguous, see MCL 46.404(b), compact, and as nearly square a shape as practicable, see MCL 46.404(c), to avoid gerrymandering. *Id.* at 260-261. The Court warned, however, that Criterion (c) was not an end in itself; it was a means to an end. For that reason, Criterion (c) could not be used to subordinate the boundary criteria stated under MCL 46.404(d), (e), and (f). *Id.* at 261. Rather, the Court explained, Criterion (c) should be used to select between two competing plans that otherwise preserve boundary lines: "[When] there is a choice between alternative plans both of which preserve such boundary lines, the plan which is more compact and square in shape is to be selected because compactness and squareness has a higher stated order of importance." *Id*.

## C. CRITERION (A)

On appeal, Pedersen argues that the plan adopted by the Commission did not meet the requirements of MCL 46.404(a). He states that the McMichael Plan has a population deviation of 11.3%, which he admits is less than the maximum deviation identified by our Supreme Court as the maximum permissible deviation. See *Apportionment of Wayne Co*, 413 Mich at 263. Nevertheless, citing *Brown v Thomson*, 462 US 835, 842; 103 S Ct 2690; 77 L Ed 2d 214 (1983), he argues that the districts do not meet the requirement that they "be single-member districts and as nearly of equal population as is practicable" on the ground that the Commission failed to meet its burden to identify a rational state policy for a deviation in excess of 10%, and he maintains that the Commission cannot justify the divergence.

As already noted, our Supreme Court did not adopt the federal burden-shifting approach for examining whether an apportionment plan meets the requirements of the United States Constitution when considering the requirement stated under MCL 46.404(a). Rather, the Court held that commissions were required to draw district lines so as to preserve township, village, city, and precinct lines to the extent it could be done without exceeding the range of allowable divergence under federal law, which it determined was 11.9%. See *Apportionment of Wayne Co*, 413 Mich at 263.

The Supreme Court later clarified that it "adopted those federally imposed limits without independent analysis and without indicating that any additional requirements were to be imposed." *In re Apportionment of Tuscola Co Bd of Comm'rs—2001*, 466 Mich 78, 83-84; 644 NW2d 44 (2002). Because it had not adopted any additional requirements, the Supreme Court rejected this

Court's attempt to incorporate an "equidistant percentage range as a mandatory principle in apportionment cases." *Id*. Rather, the Court stated that the sole test for the population requirement was whether the "the total departure of the largest and smallest districts from the average size does not exceed 11.9 percent." *Id*. at 79.

In this case, Pedersen presented demographic data that showed that the population of the largest district in the McMichael Plan, District 3, had a population of 6,854, which was 405 higher than the target population of 6,449. He presented evidence that the smallest district, District 7, had a population of 6,125, which was 324 persons below the target. The total departure was approximately 11.3% (6.286 + 5.019 = 11.305). The total departure was less than the 11.9% set by our Supreme Court as the maximum departure. Consequently, Pedersen has not shown that the McMichael Plan failed to comply with the requirement that the districts be composed of single-member districts with as of nearly equal population as practicable under MCL 46.404(a). See *In re Apportionment of Tuscola Co Bd of Comm'rs—2001*, 466 Mich at 79, 83-84.

## D. CRITERION (B)

Under MCL 46.404(b), the Legislature required that all districts be contiguous. On appeal, Pedersen argues that the McMichael Plan contains three portions of districts that are surrounded by other districts, which, he maintains, violates the rule of contiguity. Pedersen supported his contention with a map that identifies three areas—Areas A, B, and C—which represent portions of districts in the McMichael Plan that Pedersen contends are not contiguous to their parent district:



Area A is part of District 2, but is separated from District 2 by the portion of District 5 that constitutes Area B. Area B is similarly separated from its parent district by Area A. Areas A and B touch their parent districts at two corners each. By contrast, Area C, which is part of District 5, does not touch its parent district at any point; instead, it is completely surrounded by Districts 1 and 2.

-7-

The Commission responds that the Legislature did not define the term contiguous, so it must be defined by turning to either a lay dictionary or a legal dictionary. It then argues that contiguous means touching along any boundary. Because Areas A and B touch their parent districts at the corners of their borders, the Commission argues that those areas are contiguous with their parent districts. Webster's defines "contiguous" as "being in actual contact; touching along a boundary or at a point." Merriam Webster, *Merriam-Webster.com Dictionary*, <http://www.meriam-webster.com/dictionary/contiguous> (accessed April 20, 2022). Black's Law Dictionary (11th ed) similarly defines contiguous as "[t]ouching at a point or along a boundary." Because Areas A and B make point-to-point contact with their districts, they meet the statutory criterion that districts shall be contiguous.

As for Area C, the Commission admits that this area is not contiguous, but it maintains that the lack of contiguity may be excused because the strip of District 2 that separates Area C from District 5 is a thin strip of land and there are no voters on that strip, which it asserts is similar to a situation involved in a plan that this Court recently upheld in an unpublished order.[4]

The Legislature unambiguously stated that "all districts shall be contiguous." MCL 46.404(b). The term "shall" denotes mandatory conduct. See *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982). Moreover, the Legislature did not provide any exceptions to the contiguity requirement, whereas it provided that several other standards are subject to qualifications or exceptions. See MCL 46.404(a) (stating that the population of each district need only be as nearly equal as practicable); MCL 46.404(c) (stating that the districts should be as compact and nearly square as practicable); MCL 46.404(d), (e), (f) (subjecting the standards to the necessity of meeting the population standard). As such, the Legislature intended that commissions comply with Criterion (b) without exception or compromise.

The Commission nevertheless states that the failure to comply with Criterion (b) is not fatal to the validity of its plan. It maintains that this Court has the authority to affirm a plan that does not comply with Criterion (b) if this Court determines that the Commission's decision to adopt the plan constituted a reasonable exercise of discretion. The fallacy in this argument is that it assumes the Commission had the discretion to ignore this requirement if doing so furthered one of the other criteria. As noted, the Legislature did not qualify the requirement that it stated in Criterion (b) in the same way that it qualified other criteria. The same is true for the first part of Criterion (a), which requires single-member districts. Likewise, Criterion (g) precludes a commission from including residents of state institutions who cannot by law register as electors. See MCL 46.404(g). Finally, Criterion (h) states without qualification that districts shall not be drawn to effect partisan political advantage. See MCL 46.404(h). It cannot be reasonably argued that the

---

[4] The Commission cites *In re Apportionment—Kent Co—2021*, unpublished order of the Court of Appeals, entered January 3, 2022 (Docket No. 359310). The order in that case might be considered persuasive, see *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017), but the order does not give any indication that the apportionment plan under consideration involved an admitted lack of contiguity, as is present in this case. Even if each district in the *Kent County* plan was not contiguous, the absence of an analysis of this particular issue renders the order unpersuasive in this instance.

Commission could have created a multimember district or could have counted the residents of a state institution for purposes of determining population, so long as it served the interests of other criteria. And the Commission could not have ignored the imperative of Criterion (h) that it not draw the districts to effect partisan political advantage so long as it did so in furtherance of other statutory criteria. The Legislature simply did not provide commissions with the discretion to ignore these mandatory criteria in the service of a different criterion.

Additionally, our Supreme Court's decision in *Apportionment of Wayne Co* cannot be understood to allow the Commission the discretion to ignore mandatory criteria. The Court there acknowledged that, when there are multiple plans that otherwise comply with the statutory requirements, the commissions have the discretion to select a plan from the complying plans. It did not hold that the Commission had the discretion to select a noncomplying plan in the interests of promoting a flexible criterion at the expense of a mandatory criterion. See *Apportionment of Wayne Co*, 413 Mich at 264-265 (stating that commissions will have areas for the exercise of judgment and that courts will ordinarily sustain the reasoned exercise of judgment); see also *In re Apportionment of Clinton Co*, 193 Mich App at 236-237 (recognizing that, when commissions have a reasonable choice, this Court will defer to the commission's exercise of discretion). Indeed, we have found no case in which this Court or our Supreme Court has approved a plan that does not comply with either MCL 46.404(b) or with the other unqualified criteria. Because some criteria are stated in mandatory terms and without any qualifications on their application, the Commission had to follow those requirements in selecting a plan. The requirement stated in Criterion (b) is one such mandatory criterion; the Legislature required the districts to be contiguous under MCL 46.404(b)—and the statutory command must be enforced as written. See *Sau-Tuk Indus*, 316 Mich App at 137.[5]

Area C is not contiguous with its parent district. Because the McMichael Plan violated the contiguity requirement stated under MCL 46.404(b), we must invalidate it, and remand to the Commission to adopt a new apportionment plan that complies with MCL 46.404(b). Nevertheless, to provide guidance on remand, we briefly address Pedersen's remaining arguments.

E. CRITERIA (D) AND (E)

Pedersen also argues that the McMichael Plan violated MCL 46.404(d) and (e) because it split Dowagiac into two separate districts and then combined those two districts with parts of three townships, even though it was not necessary to do so in order to meet the population requirement.

Both of these criteria involve preserving the integrity of township, village, city, and precinct lines. Criterion (d) precludes a commission from joining any part of a township to a city to form a district, unless it is "needed to meet the population standard." MCL 46.404(d). Criterion (e) in a similar vein precludes the Commission from dividing a township, village, or city unless "necessary to meet the population standard." MCL 46.404(e). Although the Legislature

---

[5] We also note that the Legislature stated the criteria are listed in order of importance. MCL 46.404. The particular criterion at issue here, that the districts be contiguous, is listed second among the eight criteria, following only the requirements stated in a single subsection that the districts consist of a single member and that they be as nearly of equal population as is practicable.

provided exceptions for these criteria, it framed the exceptions as involving "needed" or "necessary" combinations and divisions.

The evidence showed that Dowagiac's population was 5,721, which was less than the 6,449 population target for an eight-district plan. As such, it could readily have been incorporated into a single district. Indeed, Pedersen presented evidence that the previous apportionment plan included seven districts with Dowagiac almost entirely included within a single district. That plan had the added advantage of combining Dowagiac with a single township.

The fact that Dowagiac could have been placed entirely within one district did not render the McMichael Plan invalid. Interpreting the requirements of MCL 46.404(d), (e), and (f), our Supreme Court has held that the commissions must draw district lines to preserve township, village, city, and precinct lines to "the extent that this can be done without exceeding the range of allowable divergence . . . at the least cost to the federal principle of equal population between election districts consistent with the maximum preservation of such lines." *Apportionment of Wayne Co*, 413 Mich at 263-264. The evidence showed that the Commission had to divide and combine some portion of various municipalities in order to comply with the population requirement stated under MCL 46.404(a). Dowagiac's borders are no more inviolate than are those of the townships, villages, and precincts within the county. Cf. MCL 46.404(d), (e), and (f). As such, the Commission could exercise its discretion when determining how to draw lines to effect the least disruption to municipal boundaries consistent with the requirements of MCL 46.404. See *In re Apportionment of Clinton Co*, 193 Mich App at 237-239.

On appeal, Pedersen has only argued and shown that the Commission could have created a district that did not divide Dowagiac. He has not established that the McMichael Plan failed to preserve township, village, city, and precinct lines to the greatest extent practicable under the requirement that the districts have as nearly equal population as possible and be consistent with the remaining criteria. As the Commission correctly notes, Pedersen's preferred resolution of the problem would require additional splits and combinations of townships and precincts, which themselves would contradict the same criteria. Pedersen has failed to present sufficient evidence that the Commission violated the law when it exercised its discretion to adopt a plan that divided Dowagiac in order to meet the population requirements rather than splitting other townships and precincts. See *id*.

## F. CRITERION (H)

Pedersen finally argues that the evidence showed that the Commission adopted the McMichael Plan for the impermissible purpose of gaining partisan political advantage, which contradicts the requirement stated under MCL 46.404(h). The Commission maintains that Pedersen has no evidence to support that contention. Instead, it argues that the evidence showed that McMichael did not draw the districts for partisan advantage and that the other Republican commissioners did not take partisan politics into consideration when selecting the McMichael Plan. Contrary to the Commission's contention on appeal, Pedersen presented evidence from which this Court could infer that the Commission adopted a plan that split Dowagiac for an improper purpose.

Our Supreme Court has stated that, whereas Criteria (a) through (f) identify the goals for a valid apportionment plan, Criterion (h) identifies that the pursuit of partisan political advantage may not be a goal when drawing district lines. See *Apportionment of Wayne Co*, 413 Mich at 260. To establish a violation of MCL 46.404(h), Pedersen had to present more than a "naked claim"— he had to show that the division of Dowagiac results in a partisan political advantage. See *In re Apportionment of Clinton Co*, 193 Mich App at 235.

In her affidavit, Dr. Ludman averred that the previous apportionment plan placed Dowagiac in a single district. Because Dowagiac had the only significant population of Democratic voters, it was the only competitive district for county commissioner within the county. Dr. Ludman stated that the district that contained Dowagiac elected a Democratic county commissioner who served from 2008 to 2020. The district elected a Republican commissioner in 2020. Dr. Ludman further averred that, on the basis of data about the registered voters in the McMichael Plan, every district would be solidly dominated by Republican voters. This evidence established that Pedersen had more than a naked claim of partisanship. See *id*. Moreover, because the evidence established demographically and cartographically that the McMichael Plan effected a partisan advantage, the evidence permitted an inference that the split of Dowagiac was intentional. See *id*. The Commission maintains that its notes establish that partisan considerations did not come into play in the drafting and selection of the McMichael Plan. However, the record permits an inference that the statements to that effect were not credible.

McMichael asserted that she did not consider "any information about partisan lean in creating her map." McMichael was a Republican and the county treasurer. As Pedersen argues on appeal, she had to have been aware that Dowagiac was in the only district existing under the prior plan that had elected a Democratic representative. Moreover, under the McMichael Plan the decision to split Dowagiac resulted in the lack of contiguity for one of the districts. The difficulties raised by the split of Dowagiac along with the election history for the city when it was part of a single district permit an inference that the decision to split Dowagiac—with its accompanying difficulties—was made to effect a partisan advantage. See *id*.

The minutes show that Commissioner Howie operated under the assumption that MCL 46.404(h) required the commissioners to pay no attention to data about partisan lean—to be "blind" to the data. That understanding is not supported in the law. The Legislature did not state that the commissioners could not consider partisan demographics; it provided that the commissioners could not draw the districts to effect, (i.e., to bring about) partisan political advantage. See MCL 46.404(h). The Commission had the authority to consider the partisan demographics in order to maintain the status quo because maintaining the status quo would ensure that the newly drawn districts would not unfairly alter the existing allocation of political power. See *id*. at 239.

The Republican commissioners also asserted that they felt that the McMichael Plan was more compact than the Ludman Plan. Howie asserted that District 8 in the Ludman Plan was too large for a commissioner to represent. The Republican commissioners claimed that these issues outweighed "the issue of splitting Dowagiac into two districts." These assertions do not bear scrutiny. District 8 of the Ludman Plan encompassed more than three townships on the eastern edge of the county, but it was not as large as District 3 of the McMichael Plan. A cursory comparison of the Ludman Plan with the McMichael Plan shows that both plans had reasonably

square and compact districts. The claim that the differences between the plans militated in favor of dividing Dowagiac into two districts does not appear to be supported by the record before us.

Because this is an original action, this Court can assign weight and assess the credibility of the evidence. See MCR 2.517(A)(1). This Court could also refer this case to a circuit court to conduct an evidentiary hearing at which the commissioners could testify about the considerations that went into the decision to split Dowagiac. See MCR 7.206(D)(4). Nevertheless, because we conclude that the McMichael Plan was invalid for failure to comply with MCL 46.404(b), we need not resolve whether the Commission divided Dowagiac for an impermissible purpose. See MCL 46.404(h). Rather, if the Commission should again select an apportionment plan that divides Dowagiac on remand, we instruct the Commission to explain how that split was necessary to meet the population requirements and preserve the integrity of other municipal boundaries.

## III. CONCLUSION

The Commission adopted an apportionment plan that did not comply with the requirements of MCL 46.404(b). For that reason, it was invalid. Accordingly, we vacate the Commission's apportionment plan and remand this case to the Commission to adopt a new apportionment plan that complies with MCL 46.404. See *Apportionment of Wayne Co*, 413 Mich at 232 (remanding to the respective commissions for the drawing of apportionment plans in conformity with the law).

Vacated and remanded.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola